Warren A. **BRASWELL**, Appellant,

v.

Margaret M. **HECKLER**, Secretary of Health & Human Services, Appellee.

No. 83–1628.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1984.

Decided May 2, 1984.

John W. Reid, II, Schnapp, Graham & Reid, Fredericktown, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for appellee; Paul P. Cacioppo, Regional Atty., Region VII, Bruce R. Granger, Atty., Dept. of Health and Human Services, Kansas City, Mo., of counsel.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

HEANEY, Circuit Judge.

Warren Braswell appeals the district court's order granting summary judgment to the defendant Secretary of Health and Human Services. That order affirmed the Secretary's decision denying Braswell social security disability benefits. The sole issue on appeal is whether the Secretary's decision denying disability is supported by substantial evidence. For the reasons set forth below, we reverse.

Braswell is now 49 years old. He has a fifth grade education. He served in the military and received an honorable discharge. He has worked since he was 17 years old. He was employed successively in a hat factory, an autobody plant, a crayon factory, and in a school as a janitor. More recently he has worked as a sawmill operator and general laborer.

In 1971, during a period of "terrible depression," Braswell attempted to commit suicide by shooting himself in the head. Although he survived this injury, bullet fragments remain in his head. Several years later, Braswell began to have seizures, and he was hospitalized for a blackout in 1975. A skull x-ray revealed that he now has a bone deformity in the right frontal region, and a brain scan diagnosed decreased blood flow through the right side of his brain. The doctor diagnosed his condition as "post operative brain surgery epilepsy." His doctors' reports variously describe him as now slightly retarded, or of low average intelligence.

The doctors discharged him on anticonvulsant medication. With this medication, Braswell no longer has convulsions or "grand mal" seizures, but he continues to have blackout spells, or "petit mal" seizures. These blackouts may last from ten to twenty minutes, and afterward he often feels weak and needs to lie down. During the time he worked as a sawyer, Braswell had three different car accidents due to his blackouts, and has now been instructed that he cannot drive. Because of his blackout spells, he lost the last job he held as a laborer for a siding contractor. Braswell's wife and neighbors observe that his personality has changed after the head injury. In contrast to his formerly calm disposition, he now tends to be hostile, becomes angry more easily, and thinks "he is always right."

Braswell filed a claim for disability insurance and supplemental security income benefits on October 16, 1980. The Secretary denied his claims; he requested and received a hearing before an Administrative Law Judge (ALJ) on February 24, 1982. The ALJ also denied his applications, and the Appeals Council affirmed this decision on May 18, 1982. Braswell then filed suit in federal district court for the Eastern District of Missouri. After reviewing a federal magistrate's recommendation, the district court granted the Secretary's motion for summary judgment on April 28, 1983. Braswell then brought this appeal.

Our task on review is to determine whether the Secretary's decision denying disability is supported by substantial evidence. 42 U.S.C. § 405(g) (1976). Persons are considered "disabled" under the Social Security Act if they have an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A) (1976).

Once claimants show their inability to perform their former job due to their disability, the burden then shifts to the Secretary to prove that they can perform some other

kind of substantial gainful activity. *Jackson v. Schweiker,* 696 F.2d 630, 631 n. 1 (8th Cir.1983); *Tucker v. Schweiker,* 689 F.2d 777, 779 (8th Cir.1982); *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982).

Under the Secretary's regulations, the disability determination involves step-by-step consideration of any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education, and work experience. 20 C.F.R. § 404.1520(a) (1983). In this case, the ALJ decided to deny disability because he found that Braswell's impairment is not of such severity as to preclude him from performing any substantial gainful activity, and that he retains the residual functional capacity to perform his past relevant work as a janitor.

We hold that there was not substantial evidence to support these findings by the ALJ for several reasons. First, the Secretary's regulations provide that if the claimant suffers an impairment which meets the duration requirement and is listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404, or is equal to a listed impairment, the claimant will be determined disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(d) (1983). The ALJ found that Braswell's condition did not meet or equal a listed impairment. Section 11.03 of the Listing of Impairments provides:

> 11.03 *Epilepsy—minor motor seizures (petit mal, psychomotor, or focal), documented by EEG, and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Appendix 1, Subpart P (1983) (emphasis in original).

For all practical purposes, Braswell's condition meets these requirements. Braswell and his wife testified that his blackout spells persist, but not on a normal schedule. He may go a month without a blackout, and then have two a week for a month. Further, Braswell does not remember when he has these blackouts, so unless someone else is with him they go unnoticed. Mrs. Braswell testified that he might have two blackouts in a day. They last for several minutes, his eyes become transfixed, he loses consciousness, and as he comes out of them he is weak, white, and sweating. None of this testimony is contradicted in the record.

The medical reports by Doctors Beyer, Glenn and Sherrod consistently note these blackout spells and diagnose a seizure disorder consistent with postoperative brain surgery epilepsy. Braswell had been given several EEG tests and they were normal. Thus the record establishes that despite taking his medication for several years, the minor seizures persist.

It would be stretching the requirements of 11.03 to an unreasonable degree to deny Braswell's disability claim simply because he does not have a blackout regularly once a week. Given that the blackouts average once a week, and the fact that he loses consciousness and consequently cannot recall all of his seizures, Braswell's condition meets or equals the requirements of 11.03.

One question may remain concerning whether Braswell met the EEG documentation requirement. Although Braswell's medical record indicates several normal EEGs, this did not keep any of the doctors from diagnosing an epileptic condition, and prescribing anticonvulsant drugs. Indeed, a look at the medical literature cautions that the EEG's value in diagnosis should not be overrated:

> The question "are the patient's symptoms epileptic?" can rarely, possibly never be answered from the EEG with an unequivocal negative since on the one hand, patients with definite epilepsy have been known to have perfectly normal EEG records and, on the other, there are no definite EEG correlates of the various other non-epileptic conditions which could be responsible for the symptoms.

*A Textbook of Epilepsy*, 136–137 (Laidlaw & Richens ed. 1976). *See also* Black, Hermann & Shope, *Nursing Management of Epilepsy* 16 (1982) ("the value of electroencephalography is too often overrated"); *Deuter v. Schweiker*, 568 F.Supp. 1414, 1421 n. 6 (N.D.Ill.1983) (EEG documentation language in 11.03 cannot be read absolutely to require an abnormal EEG to support a finding of epilepsy, or it would be medically invalid).

The medical report in the record by Dr. Glenn noted: "1. Post gunshot wound to head, compatible history with grand mal seizure disorder *in spite of normal EEG, which sometimes will occur.*" Tr. at 133, (emphasis added). In this light, we cannot but conclude that while Braswell may not meet the formal requirements of section 11.03 in the List of Impairments to the last letter, his condition is functionally equal to that listed in section 11.03. Such a finding is consistent with a decision in the Ninth Circuit holding that a claimant with petit mal epilepsy is disabled under the Social Security Act. *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir.1982).

The ALJ also denied Braswell's claim because he found that Braswell could return to his past relevant work. The work activity report in the record clearly states that Braswell was let go from his most recent job because of his blackout spells. This job was as a general laborer for a siding contractor. It is also conceded that Braswell cannot return to his former work in a sawmill due to his blackouts, and that he cannot drive a car for the same reason. The ALJ found that Braswell retained the capacity "to perform work activities not requiring him to drive or to operate machinery, including his former work activity as a janitor." Because we hold that Braswell's condition equals a listed impairment, and he is therefore disabled under the regulations, we need not review this finding. We note in passing, however, that the ALJ offers no reason in his decision to suggest why Braswell may return to his work as a janitor when he was required to leave his recent job as a general laborer due to his blackouts. As we review the record, there is substantial evidence to support only one conclusion: that Braswell's blackout spells—which cause him to lose consciousness for ten to twenty minutes and remain weak for some time afterward, coupled with his hostile disposition and slight retardation due to his head injury—prevent him from performing his past relevant work or any other substantial gainful activity.

We therefore reverse the order of the district court affirming the Secretary's denial of Braswell's disability claim. The Secretary is directed to award Braswell appropriate disability benefits.