United States Court of Appeals

for the eighth circuit

_____

No. 96-2529
_____

Belinda Flanery,                          *
                                          *
            Appellant,                    *
                                          *   Appeal from the United States
        v.                                *   District Court for the Eastern
                                          *   District of Arkansas.
Shirley S. Chater,                        *
Commissioner of the Social                *
Security Administration,                  *
                                          *
            Appellee.                     *


_____

Submitted: January 13, 1997

Filed: April 25, 1997
_____

Before RICHARD S. ARNOLD, Chief Circuit Judge, BEAM, Circuit Judge, and
        ALSOP,[1] District Judge.
_____

BEAM, Circuit Judge.

        Belinda Flanery appeals the denial of Supplemental Security Income
(SSI) benefits.  Because we find the Commissioner's decision is not
supported by substantial evidence in the record as a whole, we reverse and
remand for an award of benefits.

_____

        [1]The Honorable Donald D. Alsop, United States District Judge
for the District of Minnesota, sitting by designation.

## I. BACKGROUND

Flanery is a twenty-six-year-old woman with a seizure disorder and borderline intellectual functioning. She suffers from both grand mal seizures[2] and psychomotor seizures.[3] She has a ninth-grade education and has never been employed. Flanery applied for SSI benefits in 1992, alleging disability since 1983 due to epilepsy and mental problems. Her application was denied initially and on reconsideration. She then requested a hearing before an administrative law judge (ALJ).

At the hearing, Flanery testified that on most days she has several nervous spells or "fits." Whenever one of these "spells" occurs, her hands draw up, her eyes roll, and she cannot comprehend what is happening around her. These episodes last for about a minute following which she has no recollection of them and has to rest for half an hour. Her daily activities, on good days, include preparing meals for her three children and light housework. She said these activities sometimes provoke a "spell." She is so tired after housecleaning that she suffers severe headaches and sometimes seizures. As a result, she stated that she "lays around" most of the time. She is unable to drive.

---

[2]A grand mal seizure is characterized by a loss of consciousness with generalized tonic-clonic seizures. <u>Dorland's Illustrated Medical Dictionary</u> 567 (28th ed. 1994). A tonic-clonic seizure is a spasm consisting of a convulsive twitching of the muscles. <u>Id.</u> at 1719.

[3]Psychomotor seizures are characterized by variable degrees of impairment of consciousness and performance of a series of coordinated acts which are out of place, bizarre, and serve no useful purpose, for which the victim is amnesic. <u>Dorland's Illustrated Medical Dictionary</u> at 567.

Flanery's husband also testified at the hearing.  He stated that he witnessed eight "spells" in a one-hour period the previous day.  His description of the spells was similar to that of his wife.  He estimated that the spells generally occur five or six times a day, more often when she is active.  The record contains statements of other people who have witnessed one or more of Flanery's "seizures," "convulsions," "blackouts," or "spells."  These witnesses described Flanery trembling, staring into space, jerking her head, and being unable to remember the episode.  In addition, the record shows that Dr. Russell L. Dixon, a psychologist, also witnessed Flanery having both a grand mal seizure and a shorter jacksonian seizure,[4] during which she stared ahead blankly, ground her teeth, rotated her head and jerked slightly several times.

The medical evidence shows that Flanery suffers from both grand mal seizures and psychomotor or focal seizures.  She was first treated for a seizure disorder when she was thirteen years old.  She was treated with an anti-convulsant medication that apparently controlled her grand mal seizures.  In 1991, Flanery's treating physician, Dr. Gary R. Goza, noted that Flanery continued to suffer from "spells" involving a sudden loss of memory and comprehension.  The frequency of the spells varied--she sometimes would not have any for a few days and sometimes had several in a day.  Dr. Goza's diagnosis was "seizure disorder, generalized

---

[4]Jacksonian epilepsy is characterized by focal motor seizures with unilateral clonic movements (alternate contraction and relaxation of muscles) that start in one group of muscles and spread systematically to adjacent groups. Dorland's Illustrated Medical Dictionary at 567.  A focal motor seizure is a simple partial seizure consisting of a spasm of a muscle group. Id. at 1503.

seizures appear to be well-controlled," although at that time he questioned whether Flanery might still be having partial seizures.[5]

An EEG later in 1991 showed abnormal brain function. Dr. Goza noted a pattern of brain activity which is "sometimes seen in patients with generalized seizure disorders." In a September 1992 letter to the state disability office, Dr. Goza stated that Flanery suffers from "episodes of transient inability to respond, partial complex seizures, and occasional grand mal seizures." In a February 1993 letter, Dr. Goza stated that Flanery suffers from partial complex seizures that last about fifteen seconds and occur several times a week. In December 1993, Dr. Goza's notes again indicate that Flanery "otherwise continues to have episodes almost every day where she feels her eyes are fluttering and she is unable to respond appropriately for a short time but doesn't lose consciousness."

A neurologist, Dr. Peggy J. Brown, examined Flanery in 1994. Dr. Brown reported that Flanery's "seizure disorder sounds like it is consistent with complex partial seizures with secondary generalization." Dr. Brown also noted that the results of Flanery's August 1994 EEG were consistent with complex partial epilepsy and noted that Flanery's seizures were "not completely

---

[5]There are two types of partial seizures: 1) a complex partial seizure is associated with a disease of the temporal lobe and characterized by varying degrees of impairment of consciousness; the patient performs automatisms and is later amnesic for them; 2) a simple partial seizure is the most localized type of partial seizure; symptoms are varied and include motor symptoms as in a focal motor seizure. Dorland's Illustrated Medical Dictionary at 1503.

controlled on Tegretol or Dilantin."[6]  In December 1994, Dr. Brown again characterized Flanery's seizures as "poorly controlled."

A vocational expert testified at the hearing.  He was asked whether there were jobs in the national economy that a person of Flanery's age and work experience, with seizures controlled by medication, could perform if she were limited to "unskilled work which consists of nothing more than simple repetitive tasks done under simple direct concrete supervision" with interpersonal contact limited to "no more complex than that necessary to carry out the simple and direct concrete instructions" and where the work "can be performed without working at heights, around dangerous machinery, which does not require driving of a vehicle nor the carrying of a firearm." He responded that such jobs, for example those of house cleaners or child care workers, exist in the national economy.  The vocational expert was then asked, by Flanery's counsel, whether jobs existed for a person of Flanery's age and experience who had infrequent grand mal seizures and four to five petit mal seizures[7] a day that required her to rest for up to thirty minutes after each seizure.  The vocational expert stated that there were no such jobs in the national economy.

The ALJ found that although Flanery suffers from a severe seizure disorder and borderline intellectual functioning, she does not have a disorder that meets or equals the listing of

---

[6]Tegretol and Dilantin are anti-convulsant and anti-epileptic medications.  Physician's Desk Reference 603 & 1837 (49th ed. 1995).

[7]A petit mal seizure, also known as an absence seizure, consists of a momentary break in consciousness of thought or activity, often accompanied by automatisms or clonic movements, especially of the eyelids.  Dorland's Illustrated Medical Dictionary at 1502.

presumptively disabling impairments. In making that finding, he noted that "the medical record shows that the claimant's seizure disorder is under good control with Dilantin" and that "the medical findings that are present are not consistent with the disabling level of seizures alleged by the claimant." He discounted Flanery's testimony regarding daily seizures as inconsistent with her daily activities and found her "subjective allegations are not borne out by the overall record and are found not to be fully credible." The ALJ also discounted Flanery's husband's account of the seizures as based on an uncritical acceptance of Flanery's complaints and motivated by a desire to help her obtain benefits. The ALJ thus found that Flanery has the residual functional capacity to perform a wide range of medium work, such as that of a child care worker or a house cleaner. The Appeals Council affirmed the decision, as did the district court.

On appeal, Flanery contends that the ALJ's decision is not supported by substantial evidence. She argues that her impairment meets or equals the presumptively disabling condition listed in Section 11.03 of the Appendix 1 to Subpart P of 20 C.F.R. Part 404 ("the Listings") which describes disability by reason of epilepsy with minor motor seizures.[8]

_____

[8]Flanery also suffers from epilepsy with grand mal seizures as described in Section 11.02 of the Listings. However, the record supports the ALJ's finding that Flanery's grand mal seizures are controlled by medication and Flanery does not dispute that finding. Accordingly, her impairment does not meet or equal the disability listed in Section 11.02.

-6-

## II. DISCUSSION

Our task on appeal is to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Siemers v. Shalala, 47 F.3d 299, 301 (8th Cir. 1995). In our review of the record, we thus consider evidence that detracts from the decision as well as evidence that supports it. Id. Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the conclusion. Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993).

Under the Commissioner's regulations, the disability determination involves step-by-step analysis of any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. 20 C.F.R. § 404.1520(a); Braswell v. Heckler, 733 F.2d 531, 532 (8th Cir. 1984). If the claimant suffers from an impairment that is listed in the Listings or is equal to such a listed impairment, the claimant will be determined disabled without considering age, education, or work experience. Braswell, 733 F.2d at 533.

To be considered presumptively disabled under Section 11.03 of the Listings, a claimant must have seizures that are documented by an EEG and by detailed description of a typical seizure pattern with all associated phenomena. 20 C.F.R. Pt. 404, App. 1, Subpt. P § 11.03 (1996). These seizures must occur more frequently than once a week in spite of at least three months of prescribed treatment. Id. The seizures must be accompanied by an alteration

of awareness or loss of consciousness and transient postictal[9] manifestations of unconventional behavior or significant interference with activity during the day.  Id.

Flanery's condition meets all of these requirements.  Her seizures are documented by abnormal EEG results.  Flanery and her husband testified that her seizures occur more often than once a week.  The Flanerys testified that the seizures involve alteration of awareness and significantly interfere with daily activities.  This testimony is further supported by the statements of other seizure witnesses and by the report of a doctor who witnessed a seizure.  None of that testimony is contradicted in the record.

Furthermore, the medical evidence uniformly demonstrates that Flanery has seizures that are consistent with partial complex epilepsy.  The ALJ placed inordinate emphasis on an isolated statement by Dr. Goza in 1991 that Flanery's seizures were controlled by medication.  Read in context, that statement refers only to her grand mal seizures and not to her "spells" or petit mal seizures.  The statement is immediately followed by a sentence regarding the continued occurrence of the "spells."  Although initially hesitant to label the spells as seizures, Dr. Goza later diagnosed the episodes as partial complex seizures following Flanery's abnormal EEG.

In addition, the ALJ improperly discounted medical diagnoses as having been based only on Flanery's own recitation of events.  A patient's report of complaints, or history, is an essential diagnostic tool.  See, e.g., Brand v. Secretary of the Dep't of

---

[9]Postictal means occurring after a seizure or sudden attack.  Dorland's Illustrated Medical Dictionary at 1340.

Health, Educ. and Welfare, 623 F.2d 523, 526 (8th Cir. 1980) ("[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints").  There is nothing in this record to suggest that Flanery's medical professionals should have doubted Flanery's word.  Her claimed symptoms are consistent with objective tests (the EEG), the nature of her disorder, and eyewitness testimony.

Moreover, we find that Flanery's account of her daily activities is not inconsistent with a disabling seizure disorder. She testified that, although she can sometimes care for her own needs and those of her three children, her days are often interrupted by seizures and by her need to rest afterward.  These episodes may not be totally disruptive in a home environment, but could hardly be accommodated in the workplace.  In short, the record overwhelmingly supports a finding of disability.[10]

Because we find Flanery disabled on this record, we must consider the remedy.  We find that the record supports an award of benefits.  Even if Flanery's condition did not meet the Listings, the evidence shows that there would be no jobs in the national economy that Flanery could perform. If the record contains substantial evidence supporting a finding of disability, a

---

[10]We note that this action could also be reversed on the ground that the hypothetical posed to the vocational expert did not contain all of Flanery's impairments that are supported by the record.  See, e.g., Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993) (the ALJ's hypothetical must include those impairments that are substantially supported by the record).  Flanery's partial complex seizures are supported by the record and she was entitled to have the vocational expert consider them along with her other impairments.  In light of our disposition, and because Flanery's counsel elicited evidence of the effect of the partial complex seizures on her employment prospects, we need not further discuss  the issue.

reviewing court may reverse and remand to the district court for entry of an order granting benefits to the claimant. <u>Andler v. Chater</u>, 100 F.3d 1389, 1394 (8th Cir. 1996). Under the circumstances, we find further hearings would merely delay benefits; accordingly, an order granting benefits is appropriate. <u>Id.</u>

## III. CONCLUSION

For the reasons stated above, we reverse and instruct the district court to remand to the Commissioner for an award of benefits.

ALSOP, District Judge, dissenting.

Because I do not agree with the majority that the substantial evidence in the record shows that Flanery meets all of the requirements under Section 11.03 of the Listings, I respectfully dissent. As the majority notes, Listing 11.03 lays down the requirements for Epilepsy-Minor Motor seizures. It provides:

> Epilepsy-Minor motor seizures (petit mal, psychomotor, or focal), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

As the majority points out there is evidence of seizures documented by abnormal EEG results, however, the substantial evidence on the record does not show that Flanery has experienced these seizures with the frequency required in the listing. The majority found that

-10-

the testimony of Flanery and her husband showed that she had seizures occurring more than once weekly. The ALJ discredited the testimony of Flanery's husband finding it was based upon an uncritical acceptance of Flanery's complaints and motivated in part by the desire to see her obtain benefits.  Tr. 22. He discounted Flanery's subjective complaints, finding they were inconsistent with the medical findings and Flanery's functional limitations. Id. Questions of credibility are for the trier of fact and the Court usually defers to such a finding if the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).  Here the ALJ did both.

The majority found the testimony of Flanery and her husband was supported by statements from other witnesses and a doctor who witnessed a seizure.  While these statements show that Flanery experienced seizures, none show that the seizures occurred more frequently than one weekly.

I cannot agree with the majority that the medical evidence shows that Flanery meets the 11.03 Listing. The majority relies upon a statement made by Dr. Goza in 1991 to establish that Flanery has partial seizures. I disagree that Dr. Goza's 1991 statement supports such a finding. Even if his statement that Flanery's "seizures appear to be well controlled", Tr. 180, is understood as the majority proposes to refer only to Flanery's grand mal seizures, the statement does not indicate that Flanery was experiencing uncontrolled frequent petit mal seizures. Dr. Goza indicated that he had "some question whether she still may be having partial seizures". Id.  A statement Dr. Goza made in 1993 reiterated his doubts about whether Flanery was experiencing partial seizures. Tr. 246. In that statement he observed that it

was difficult to be certain whether episodes Flanery claimed to be having almost daily, in which "her eyes are fluttering and she is unable to respond appropriately for a short time but doesn't lose consciousness," are partial seizures. Id.

The only other medical evidence offered to show that Flanery meets the 11.03 Listing is a statement made in August 1994 by a neurologist, Dr. Brown, who after talking with Flanery and reviewing her history stated that her seizures had been poorly controlled on the drug she was taking. Tr. 252. The ALJ found that the neurologist's statement was based upon Flanery's subjective complaints and discredited it. As the ALJ had found the testimony of frequent uncontrolled seizures from Flanery and her husband was not credible, the ALJ could properly conclude in the absence of medical evidence that a report based upon such testimony was unreliable.

The evidence of Flanery's daily activities also shows she does not meet the listing requirement. The record shows that she takes care of a house and three children, and does the cooking, laundry, and other household chores. She has no restrictions on daily activities from her physician, other than her use of an automobile, heavy machinery, and firearms.

The substantial evidence in the record does not show that Flanery meets the listing requirements of 11.03 and therefore I would affirm the district court's affirmance of the denial of SSI benefits by the Commissioner based upon substantial evidence in the record as a whole.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.