**Cheryl J. DAVIS, Plaintiff,**

v.

**John CALLAHAN, Ph.D.,[1] Commissioner of Social Security, Defendant.**

**No. 4–96–CV–90706.**

United States District Court, S.D. Iowa, Central Division.

Aug. 12, 1997.

---

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is hereby substituted for Shirley S. Chater as defendant in this action.

**908**

Gregory W. Peterson, Des Moines, IA, for Plaintiff.

Inga Bumbary–Langston, Asst. U.S. Atty., U.S. Courthouse Annex, Des Moines, IA, for U.S.

## MEMORANDUM OPINION AND ORDER OF REVERSAL

PRATT, District Judge.

Plaintiff, Cheryl J. Davis, seeks judicial review of the Social Security Commissioner's decision denying her insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 (1994). This court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). This case is reversed and the Commissioner is ordered to award benefits.

## BACKGROUND

Plaintiff filed an application for disability benefits on April 1, 1992, claiming an onset of disability date of January 24, 1990. Her application was denied initially and upon reconsideration. After a hearing, Administrative Law Judge John P. Johnson (ALJ) issued a decision on October 19, 1993, denying benefits. On March 22, 1994, the Appeals Council remanded the case for further consideration. After a second hearing, the ALJ issued a new decision on December 28, 1994, which again denied Plaintiff benefits. The ALJ's second decision was affirmed by the Appeals Council on August 9, 1996. A Complaint was filed in this court on September 17, 1996.

## STANDARD OF REVIEW

In *Ghant v. Bowen,* 930 F.2d 633, 637 (8th Cir.1991), the Court wrote:

We review the Secretary's decision denying Ghant disability insurance benefits to determine whether it is supported by substantial evidence on the record as a whole. See *Arnick v. Sullivan,* 921 F.2d 174, 176 (8th Cir.1990). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In reviewing the Secretary's decision, we must consider evidence that both supports and detracts from the Secretary's decision. See *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Clarke v. Bowen,* 843 F.2d 271, 272 (8th Cir.1988).

*See also Gavin v. Heckler,* 811 F.2d 1195 (8th Cir.1987).

## ALJ'S FINDINGS

Plaintiff met the earnings requirement of the Act on her alleged onset of disability date and continued to meet them through the end of December, 1995. Tr. P. 240. The ALJ, following the sequential evaluation found at 20 C.F.R. § 404.1520, found that Plaintiff has

not engaged in substantial gainful activity since May 23, 1991. The ALJ found that Plaintiff has severe impairments: status post left ganglion cyst removal; status post carpal tunnel release and cubital tunnel release times two with complaints of pain; plantar fascitis and heel spur syndrome; a history of fibromyalgia; a history of chronic fatigue syndrome; recurrent major depressive disorder; a mixed personality disorder; a history of agoraphobia with and without panic attacks; and, esophageal reflux. The ALJ found that none of Plaintiff's impairments are severe enough to meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that Plaintiff is unable to do any of her past relevant work, but, at step 5, found that there is unskilled work which exists in significant numbers that Plaintiff is capable of performing.

### BURDEN OF PROOF

Initially, it was Plaintiffs burden to prove that she is unable to perform her past relevant work. Once that burden was met, the burden of proof shifted to the Commissioner:

> to prove with substantial evidence that the applicant has the RFC [residual functional capacity] to do other kinds of work, and that his RFC, age, and so forth fit him to do some job that exists in the national economy. The grid, if applicable, establishes that jobs exist for certain kinds of people. The Secretary must still show that the claimant is a member of one of the groups described in the grid. This burden includes the duty to establish by medical evidence that the claimant has the requisite RFC.

*McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc). In *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983), the Court wrote:

> The Secretary's burden in this regard is twofold. He or she must first prove that the claimant retains the capacity to do other kinds of work, a burden which includes "the duty to establish by medical evidence that the claimant has the requisite RFC [residual functional capacity]." *McCoy v. Schweiker*, supra, 683 F.2d at

1147. The claimant's RFC is the claimant's physical capacity to do work which is defined in the Secretary's regulations as sedentary, light, medium, heavy, or very heavy. (FN4) If there is evidence that the claimant is also suffering from a nonexertional limitation, such as a mental, sensory or skin impairment, an environmental restriction, or pain, the Secretary's burden includes showing that these impairments do not preclude the claimant from performing other work.

Once the claimant's capabilities are established, the second aspect of the Secretary's burden is to demonstrate that there are jobs available in the national economy that realistically suit the claimant's qualifications and capabilities. *McMillian v. Schweiker*, supra, 697 F.2d at 221; *Cole v. Harris*, 641 F.2d 613, 614 (8th Cir.1981). In determining whether there are jobs available that a claimant can perform, the Secretary must consider the claimant's exertional and nonexertional impairments, together with the claimant's age, education, and previous work experience. *McMillian v. Schweiker*, supra, 697 F.2d at 221; *McCoy v. Schweiker*, supra, 683 F.2d at 1146–1148.

*See also Soth v. Shalala*, 827 F.Supp. 1415, 1417 (S.D.Iowa 1993).

In the case at bar, the ALJ found:

> The claimant has the residual functional capacity to perform the exertional and nonexertional requirements of work except for: lifting more than a maximum of 10 pounds on the left and more than a maximum of 20 pounds on the right or routinely lifting more than 10 pounds; standing more than 15 to 30 minutes at a time; sitting more than one hour at a time; and walking more than one-half block at a time. Furthermore, the claimant can do no repetitive bending, stooping, squatting, kneeling, crawling, or climbing. Furthermore, the claimant can do no continuous gripping on the left and do no repetitive work overhead with the arms. She cannot work at unprotected heights or around hazardous moving machinery. She can perform simple routine repetitive work not requiring constant very close attention to

detail or use of independent judgment for decisionmaking (sic). She can have occasional contact with the public and requires occasional supervision. Finally, she can work at a regular pace. (20 C.F.R. § 404.1545)

Tr. P. 41. The rationale for this residual functional capacity finding is found on pages 36 and 37 of the transcript. The ALJ explained in great detail why he did not find Plaintiff's testimony credible. However, making a credibility finding is not equivalent to proving with medical evidence that Plaintiff has a residual functional capacity. *Soth v. Shalala*, 827 F.Supp. 1415, 1417 (S.D.Iowa 1993). Furthermore, in the government's brief, counsel writes: "The issue in this case is whether plaintiffs subjective complaints are credible to the extent that they are disabling." The court disagrees. The issue is whether the Commissioner proved, with medical evidence, that Plaintiff has a residual functional capacity. The ALJ pointed to very little medical evidence—and ignored a great deal of medical evidence—to support his finding that Plaintiff has the residual functional capacity for competitive work.

■ The government's brief also states:

To establish entitlement to benefits, plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d). *Plaintiff has not met her burden.*

(emphasis added). On page 37 of the transcript, the ALJ, having determined that Plaintiff is unable to do her past relevant work, stated that the burden had shifted to the Secretary to establish if a significant number of jobs exist in the national economy. No where, however, does the ALJ acknowledge the burden to establish with medical evidence that Plaintiff has a residual functional capacity. Neither the Commissioner, nor his counsel, properly recognized the shift in the burden of proof. Failure to recognize, and properly shift, the burden of proof is reversible error. *Allred v. Heckler*, 729 F.2d 529, 531 (8th Cir.1984).

## EVIDENCE THAT SUPPORTS THE DECISION

■ In his decision, the ALJ pointed to the report of Michael J. Finan, M.D., dated June 4, 1992. In this report, Dr. Finan states he is not aware of any limitations on Plaintiffs ability to lift, carry, stand, walk, sit, stoop, climb, kneel, crawl, handle, see, hear, speak, or travel. The doctor was very careful to point out that his opinion was based on his one time examination and "based upon the information I now have available." Most of the medical evidence in the record post dates Dr. Finan's report. Standing alone, Dr. Finan's opinion might be considered substantial evidence to support the decision of the ALJ. As pointed out above, however, the substantially of the evidence must also take in to account evidence in the record which detracts from the decision.

## EVIDENCE THAT DETRACTS FROM THE DECISION

After the first hearing, in January, 1993, the ALJ ordered a psychological evaluation which was done by Eva Christiansen, Ph.D. on June 22, 1993. Dr. Christiansen, after reviewing the medical records which accompanied Plaintiff and administering a battery of psychological tests, diagnosed undifferentiated somatoform disorder. Using a form supplied by the Social Security Administration, Dr. Christiansen opined that Plaintiff has no useful ability to follow work rules, deal with work stresses, or to demonstrate reliability. Dr. Christiansen also stated that Plaintiff is seriously limited in her ability to relate to co-workers, deal with the public, interact with supervisors, function independently, behave in an emotionally stable manner, and to relate predictably in social situations. The Appeals Council remanded the case to the ALJ, in part, because the ALJ's decision did "not fully address this opinion about the effects of the claimant's mental impairments."

On remand, Plaintiff was sent to Michael J. Taylor, M.D., a board certified psychiatrist. Dr. Taylor's diagnosis was major depressive disorder. Dr. Taylor wrote: "Please see attached questionnaire for functional limitations." Dr. Taylor was referring to the same

form completed by Dr. Christiansen. Dr. Taylor opined that Plaintiff has no useful ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, understand, remember, and carry out complex and detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and to demonstrate reliability. According to Dr. Taylor, Plaintiff is seriously limited in the ability to use judgment, function independently, and to understand, remember and carry out simple job instructions.

Plaintiff is being treated for major depression by David G. Windsor, M.D., a psychiatrist. Through her representative, Plaintiff submitted a mental residual functional capacity assessment and a psychiatric review technique form completed by Dr. Windsor. Dr. Windsor stated that Plaintiff is markedly limited in her ability to work in coordination with or proximity to others without being distracted by them, and to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Windsor stated that Plaintiff is moderately limited in her ability to carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, make simple work related decisions, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, or the ability to travel in unfamiliar places or use public transportation. On the psychiatric review technique form, Dr. Windsor stated that Plaintiff has frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and that she has had repeated episodes of deterioration or decompensation in work, or work-like settings which cause her to withdraw from that situation or to experience exacerbation of signs and symptoms which may include deterioration of adaptive behaviors.

In addition to being seen for mental health problems, Plaintiff is being seen by Louis E. Schneider, D.O., Ph.D., who specializes in internal medicine. Dr. Schneider diagnosed Chronic Fatigue Syndrome. Dr. Schneider wrote:

This diagnosis was based on the guidelines established in the March, 1988, issue of *Annuals of Internal Medicine,* and her historical and clinical findings are entirely consistent with the diagnosis of chronic fatigue syndrome. This syndrome involves an entire spectrum of symptoms including overwhelming fatigue and joint problems, muscle problems, problems with mentation and cognition, difficulty sleeping, headaches, depression, recurrent respiratory tract infection, large lymph nodes and extreme weakness. These symptoms are severely debilitating for most individuals with the disease, as in Cheryl's case. She is seriously debilitated by mental fogging, confusion, inability to think clearly and concentrate.... Due to the degree of severity, I have renderred (sic) Cheryl totaly (sic) disabled.

Plaintiff was seen, on October 7, 1992, by Richard Olson, M.D., a Rheumatologist at the University of Iowa who diagnosed fibromyalgia. Dr. Olson wrote that his physical examination was remarkable for tenderness over numerous trigger points of fibromyalgia and that the majority of Plaintiff's musculoskeletal symptoms corresponded to fibromyalgia. See *Sarchet v. Chater,* 78 F.3d 305, 306–07 (7th Cir.1996). Dr. Olson was not asked to comment on Plaintiffs functional limitations.

None of the reasons given by the ALJ for discounting the opinions of these doctors persuades the court that the ALJ was doing anything but substituting his opinion for that of the medical professionals. In *Pratt v. Sullivan,* 956 F.2d 830, 833 (8th Cir.1992), the court wrote:

Instead of crediting the opinions of the mental health professionals, the ALJ substituted his own unsubstantiated conclusion concerning a mental impairment for

the express diagnoses of Pratt's examining psychiatrists and psychologists. Such disregard of the record constitutes reversible error. See, e.g., *Delrosa v. Sullivan*, 922 F.2d 480, 484–85 (8th Cir.1991).

It is the law of the Eighth Circuit that the ALJ must not substitute his opinions for those of the physician. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir.1990). The treating and examining mental health professionals used forms designed by the Social Security Administration to provide doctors a convenient instrument on which to record their opinion regarding a claimant's functional limitations. The instruments themselves state that the doctor is to opine regarding the "Individual's ability to do *work-related activities on a day-to-day basis in a regular work setting*". (Emphasis in original) Form SSA–1152, Medical Assessment of Ability To Do Work Related Activities. The Mental Residual Functional Capacity Assessment form states: "Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis." Form SSA–4734–F4–SUP. In the case sub judice, the forms are all the more valuable because they were completed by doctors who had either treated or examined Plaintiff. The ALJ's failure to properly consider all the evidence before him is reversible error. *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir.1991)

### DEFICIENT HYPOTHETICAL QUESTION

Because the ALJ substituted his judgment for that of the doctors, the hypothetical question presented to the vocational expert was deficient. The ALJ asked the vocational expert to assume that Plaintiff is able to function at a physical and mental level that is simply not supported by the record of this case. Plaintiff's treating physicians, Schneider and Windsor, opined that she is disabled. The doctors' opinions were confirmed by the doctors selected by the Commissioner, Dr. Christiansen and Dr. Taylor.

The ALJ dismissed Dr. Schneider's opinion because, said the ALJ, the opinion was based upon statements of the claimant and not on any clinical findings or laboratory studies. In the first place, Dr. Schneider went out of his way to state that his diagnosis was made only "following appropriate screening tests". He also said that the diagnosis was made using the guidelines established in the March, 1988 issue of *Annuals of Internal Medicine*. Dr. Schneider wrote: "... her historical *and clinical findings* are entirely consistent with the diagnosis of chronic fatigue syndrome." (Emphasis added) In the second place, an ALJ may not discount a medical diagnosis because it is made on the basis of what the doctor is told by his patient. *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir.1997).

It is well settled law that hypothetical questions must relate *with precision* the physical and mental limitations of the claimant. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir.1990). The ALJ assumed that because Plaintiff is able to help take care of her mother, doing such things as changing her mother's colostomy bag, filling insulin syringes, doing light house work, and visiting, that she is able to function in competitive employment. The ALJ also pointed to the fact that she resides with her older son, and was driving him to work in addition to helping her mother. As stated above, a credibility finding is not equivalent to proving residual functional capacity with medical evidence—a burden that was the Commissioner's to bear. Additionally, the Court of Appeals for the Eight Circuit has said numerous times that claimants do not have to prove they are bed ridden to be found disabled. In *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989) the court wrote:

First, we note that a claimant need not prove she is bedridden or completely helpless to be found disabled. *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 41 n. 6 (2d Cir.1972); *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963). Second, we remind the Secretary that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real peo-

ple work in the real world. *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). Substantial gainful activity means the performance of substantial services with reasonable regularity either in competitive or self-employment. *Markham v. Califano,* 601 F.2d 533, 534 (10th Cir.1979). The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.

In *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980) the court, quoting *Thomas v. Celebrezze,* 331 F.2d 541 (1964), wrote: "Employers are concerned with substantial capacity, psychological stability and steady attendance; ... It is unrealistic to think that they would hire anyone with the impairments of this claimant."

## DECISION

At the hearing of October 12, 1994, the vocational expert was asked how poor reliability would affect Plaintiffs ability to work. The vocational expert testified that poor reliability would preclude competitive employment. This hypothetical is supported by the opinions of the treating and examining doctors which were discussed above. Although the vocational expert could have been asked to consider a more precise description of Plaintiffs disability, the court finds no reason to remand to take additional testimony. The additional limitations specified by the doctors would only reinforce the response that no work would be possible for a person so limited. A remand would only delay the receipt of the benefits to which Plaintiff is entitled. Therefore, the court shall reverse and award benefits outright. *Wigg v. Chater,* 904 F.Supp. 949, 964 (N.D.Iowa 1995).

Defendant's motion to affirm the Commissioner is denied. This case is remanded to the Secretary for computation and payment of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan is hereby substituted for Shirley S. Chater as defendant in this action.