**Bobby C. CARR, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 7:00CV084–AH.**

United States District Court,
N.D. Texas,
Wichita Falls Division.

Jan. 12, 2001.

Tom I. Schrandt, True & Schrandt, Wichita Falls, TX, for plaintiff.

Angie Lee Henson, U.S. Attorney's Office, Fort Worth, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, United States Magistrate Judge.

Pursuant to the written consents of the parties to proceed before a United States Magistrate Judge and the District Court's Transfer Order filed on in accordance with the provisions of 28 U.S.C. § 636(c), came on to be considered Plaintiff's complaint brought under 42 U.S.C. § 405(g) seeking judicial review of the Defendant's denial of Plaintiff's application for disability benefits under Titles II and XVI of the Social Security Act as amended.

*Procedural History:* Bobby C. Carr ("Carr") filed an application for Title II disability benefits and XVI supplemental security income benefits on March 18, 1993. (Administrative Record ("Tr.") 45). Carr was born on October 27, 1967, has a high school education, one year of college, and no past relevant work. (Tr. 83, 23).

His original application was denied on July 17, 1995 (Tr. 36–39). Carr did not appeal that decision. He filed his second application on July 14, 1997, with a protective filing date of June 19, 1997 (Tr. 297–300). Carr's application was denied initially and upon reconsideration (Tr. 279–290).

He requested an administrative hearing, which was held on October 27, 1998, before Administrative Law Judge ("ALJ") Rae M. Chamberlain (Tr. 550–84). Testimony was given by the Plaintiff, John McKnight, a relative of the Plaintiff, and Clifton King, Jr., a vocational expert. The ALJ issued her decision denying Carr's claim on February 3, 1999 (Tr. 18–26). The ALJ found that Plaintiff had a severe seizure disorder which did not meet or equal any listing in Appendix 1, Subpart P, of the regulations (Tr. 21). Despite Carr's alleged impairment, the ALJ found that he retained the ability to perform work at all exertional levels, limited by an inability to work from significant unprotected heights, around potentially dangerous, unguarded moving machinery, in more than a low stress environment, or in a job that requires commercial driving (Tr. 25). Based on this residual functional capacity, the ALJ found that Plaintiff retained the ability to perform other work in the national economy (*Id.*). Thus, the Plaintiff was found to not be disabled within the meaning of the Social Security Act (*Id.*).

Carr requested a review of the ALJ's hearing decision by the Appeals Council (Tr. 14). On March 13, 2000, the Appeals Council denied review and thus the ALJ's decision is the final administrative decision (Tr. 11–12).

■ *Standard of Review—Social Security:* In a Social Security case, the scope of judicial review is limited to a determination of whether the ALJ's decision to deny benefits is (1) supported by substantial evidence and (2) whether the proper legal standard was applied. *Kinash v. Callahan,* 129 F.3d 736, 738 (5th Cir.1997) (citing *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995)).

■ Substantial evidence means more than a scintilla, but less than a preponderance. *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989). It is defined as relevant evidence that a reasonable mind would accept as sufficient to support a

conclusion. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

■ In determining whether substantial evidence exists, the court does not reweigh the evidence, retry the issues, or substitute its own judgment. *Id.* (citing *Haywood*, 888 F.2d at 1466); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir.1994). Rather, this court reviews the ALJ's legal conclusions *de novo* and ensures that the correct legal standard was utilized by the administrative court.

■ The Commissioner's decision is granted great deference. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.1995). Accordingly, the absence of substantial evidence will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983). Findings of fact which are supported by substantial evidence are conclusive. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995).

■ *Discussion:* To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir.1985) (citing 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A)). To determine whether substantial gainful activity is possible, the Commissioner uses a five-step sequential inquiry. *Martinez*, 64 F.3d at 173–74. The five steps are:

(1) whether the claimant is presently working;

(2) whether the claimant's ability to work is significantly limited by a physical or mental impairment;

(3) whether the claimant's impairment meets or equals an impairment listed in Appendix 1 to the regulations;

(4) whether the impairment prevents the claimant from doing past relevant work; and

(5) whether the claimant cannot presently perform relevant work that exists in significant numbers in the national economy.

■ Issue is joined by Carr on step three of the sequential inquiry, i.e., whether his impairment meets or equals an impairment listed in Appendix 1 of the regulations. When a claimant makes such a showing, it is conclusive and terminates the Commissioner's analysis. *See e.g.*, *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.1988); *Flanery v. Chater*, 112 F.3d 346, 349 (8th Cir.1997).

■ The ALJ found that Carr had a severe impairment, i.e., a seizure disorder (Tr. 24, Finding No. 5).[1] A person who suffers from epilepsy, manifested by grand mal seizures, is not *per se* disabled within the scope of the Social Security Act. In order to constitute a disabling impairment consonant with Appendix 1, the criteria under Section 11.02 of Appendix 1 must be satisfied. In essence a claimant must experience such seizures more than once a month in spite of taking prescribed medications for at least three months. Evaluation of these criteria is further described in Social Security Ruling 87–6, requiring that the following elements be established to show disabling epilepsy: (1) an ongoing relationship with a treating source; (2) a satisfactory description by the treating physician and the treatment regime and response; and (3) anti-convulsive blood levels establishing the claimant's compliance. While the ALJ found that the first two elements were met, she found that the

---

1. Although the ALJ did not make a specific finding as to the specific nature of Carr's seizure, disorder the record is replete with evidence showing that he suffered grand mal seizures. *See, e.g.,* Tr. 496 (describing seizure suffered in his doctor's office lobby on May 15, 1997).

evidence showed the Plaintiff was non-compliant.

With regards to determining if a claimant is compliant with his medical treatment, section 11.00 of 20 C.F.R. Part 404, Subpt. P, App. 1 provides in pertinent part:

Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed anticonvulsive treatment. Adherence to prescribed anticonvulsive therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other anticonvulsive drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncracy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels.

In light of the fact that Carr's prior disability claim was denied and terminated without further review, the ALJ determined that the relevant time frame in considering the application, now before the court, commenced on July 18, 1995 (Tr. 19).

The records contained in the administrative file beginning in calendar year 1995 document five trips to the emergency room at Wichita General Hospital between the dates of April 4, 1995, and May 15, 1997, as a result of seizures. The record also contains two emergency calls to Plaintiff's residence on April 4, 1998, and May 21, 1998, respectively, as a result of seizures, but in neither instance was he transported to a hospital (Tr. 522 and 531). The medical records from his treating physician, Dr. Winnie Teh, reflect that he reported seizures to her which occurred about once or twice a week in February 1996 (Tr. 528); another seizure on or about July 27, 1997 (Tr. 511); seizures once a week in August 1997 (Tr. 509); and only one seizure as of November 10, 1997, after his medication was increased (Tr. 502). The last report of Dr. Teh, appearing in the record, reflects that Carr reported seizures on January 23, February 8, and March 18, 1998 (Tr. 500).

Carr submitted a report to the Social Security Administration on August 5, 1997, identifying seizures which occurred on May 15, May 18, late June, July 15 and July 20, 1997 (Tr. 337). At the administrative hearing he submitted a calendar for 1998 recording 15 seizures between January 23 and October 12, 1998 (Tr. 350–360).

■ As noted above one criterion required to establish that epilepsy is disabling is that seizures must occur more frequently than once a month. *See* § 11.02, *supra.* Plaintiff's testimony and his calendar records, if found credible, would establish the required frequency. However, the ALJ did not specifically address this element, noting only that Carr was non-compliant, discussed *infra*, and that Dr. Teh's report dated November 10, 1997 (Tr. 502), belied the frequency of seizures reported by Carr and in his 1998 calendar. *See* Tr. 22 at second paragraph and n. 2. When no clear and unequivocal credibility choices have been made by an ALJ, a court is not permitted to address such an omission by making such credibility determinations *de novo.*

■ However, even were it assumed *arguendo* that Carr suffered seizures more frequently than once a month, that

fact standing alone would not establish error on the part of the Commissioner, since in order to qualify as a disabling impairment, his condition must also be non-responsive to medication. Before such a finding would be appropriate it must be shown that the claimant is following the doctor's directions in taking the prescribed medication. An applicant's claim may be denied when it is determined that a prescribed medication was not taken as directed. *See* § 11.00, *supra; Brown v. Bowen,* 845 F.2d 1211, 1214–15 (3rd Cir.1988).

In Carr's case, the ALJ found that he failed to comply with the directions with respect to his anti-convulsive medications (Tr. 21–22). This determination was based on two blood tests appearing in the record, the observance of the ALJ at the hearing, and reports of his treating physician indicating that his seizures subsided when his treatment regimen was followed.

The administrative record contains 10 blood tests administered between April 4, 1995, and November 3, 1997 (Tr. 379, 376, 374, 412, 376, 459, 516 and 505) while Carr was taking two anti-convulsive drugs for his seizures, Dilantin and Depakote. The therapeutic range for Dilantin is 10–20 and that for Depakote is 50–100. The record contains no blood tests administered after November 3, 1997.

Of the 10 measurements recorded, all were within therapeutic range, except for May 15, 1997, when Plaintiff admitted he was not taking his medication.[2] However, after the administration of Dilantin was recommenced at the hospital, his medication levels were within therapeutic range on the two succeeding dates (Tr. 459). The ALJ found a second incident of non-compliance on August 27, 1996. *See* Tr. 412 (Exh. B3F p. 3). At the time of this measurement, Carr's doctor was changing his medication from Dilantin to Depakote. Although the Depakote reading was below therapeutic range, the Dilantin reading of 15.4 was well within the 10–20 range.

At the administrative hearing, Carr testified that he was taking Dilantin and Neurontin, another anti-convulsive medication, as prescribed by an unnamed doctor who had only recently begun treating him as a patient (Tr. 559, 562, 571–572). During the course of Carr's testimony, he presented the ALJ with a pill container which appeared to be half full. The ALJ questioned whether so many pills should still be in the container given that the hearing occurred on October 27th. (*See* Tr. 561–564). Ultimately, the ALJ relied in part on this somewhat disjointed colloquy to conclude that Carr was not taking his anti-convulsive medications (Tr. 21–22).

As noted above, the medical records do not adequately support the ALJ's conclusion that they establish that Plaintiff was non-compliant. With the exception of the seizure which occurred on May 15, 1997, these records show that over a period in excess of two years, Carr's blood tests were always within range for the presence of anti-convulsive medications. Moreover, the record is devoid of any blood tests for nearly one year preceding the administrative hearing[3], which is somewhat inconsistent with the directives of Social Security Ruling 87–6 wherein it is noted that:

> Blood drug levels reported during the regular course of treatment are usually of more probative value than evidence obtained for the purpose of disability evaluation which shows the blood drug level at one point in time. *However, information concerning current blood levels should be purchased* when the existing evidence does not contain blood drug levels and a favorable decision ap-

---

**2.** Nothing in the record indicates whether this hiatus in Plaintiff's medications was caused by his negligent failure to get his prescription refilled or for some other reason such as his inability to pay for his medication.

**3.** It cannot be determined from the administrative record whether any blood tests were administered in closer proximity to the date of the hearing.

pears to be indicated. (Emphasis added.)

The colloquy between Plaintiff and the ALJ and the ALJ's observation of the contents of his medication containers are equally unavailing in establishing substantial evidence to support a finding that Carr was non-compliant. It is unclear whether the pill container referred to was the most recent refill of the prescription or whether it contained only pills for only one prescription refill. In subsequent testimony Carr stated that he placed dosage amount in a separate container (Tr. 572). Further, neither the ALJ or Plaintiff's attorney elicited any testimony to explain the number of pills in the container or to confirm that the Plaintiff had not been taking the prescribed dosages during 1998. Thus, both the questions and answers with respect to this topic are ambiguous and show neither compliance nor non-compliance.[4]

Because there is not substantial evidence to support the Commissioner's determination at the third step of the sequential inquiry, it was error, under the present record, to proceed to the remaining two steps.

It is therefore ordered that the Commissioner's motion for summary judgment is denied and that this case is remanded to the Commissioner for further proceedings in accordance with this order.

---

4. Apparently Plaintiff consistently obtained his prescription medicine from Guffy's Pharmacy. *See* Tr. 337. If records from this pharmacist show significant gaps when Plaintiff failed to refill his medications or if the quantities of the drugs obtained in each refill compared to the prescribed daily dosages show that the required daily dosages exceeded the amount prescribed, such could support an inference that Plaintiff was not consistently complying with his doctor's orders. Blood tests obtained in 1998 would also be relevant in determining whether Carr was compliant and also in assessing the credibility of his seizures claimed to have occurred in 1998 up until the date of the administrative hearing. Likewise, such records might show or confirm the Plaintiff was compliant. However, as noted above, there is no documentation on either of these matters in the administrative record, nor any physician records subsequent to April 2, 1998.