# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————

No. 95-4025

————————

Joan M. Porch,                          *
                                        *
            Appellant,                  *
                                        *  Appeal from the United States
      v.                                *  District Court for the Western
                                        *  District of Missouri.
Shirley S. Chater,                      *
Commissioner of the Social              *
Security Administration,                *
                                        *
            Appellee.                   *

————————

Submitted: January 15, 1997

Filed: May 23, 1997

————————

Before BEAM, ROSS, and HANSEN, Circuit Judges.

————————

BEAM, Circuit Judge.

     Joan M. Porch appeals the district court's affirmance of a denial of
Social Security benefits.  Because the record does not contain substantial
evidence to support the finding of the Administrative Law Judge (ALJ), we
reverse and remand for an award of benefits.

## I.  BACKGROUND

Porch is a fifty-four-year-old woman with degenerative disc disease and carpal tunnel syndrome.  She has a twelfth-grade education and one year of vocational training as a licensed practical nurse (LPN).  She was employed as an LPN from 1973 until 1988.  She began to suffer back pain in January 1989 and underwent surgery for a herniated disc in March 1989.  She continues to suffer back pain and also suffers from carpal tunnel syndrome.

This case has a long and complicated history.  Porch applied for disability benefits on June 20, 1989, alleging a disability onset date of January 1989.[1]  Her application was denied initially and on reconsideration.  She then requested and was granted a hearing before an administrative law judge.  After the hearing, the ALJ found that Porch's allegations of disabling pain were not credible and denied benefits.  Although he found she could not return to her former employment, he found there were jobs in the national economy that she could perform such as that of a nurse who administers insurance physicals.  Porch appealed the ALJ's decision to the Appeals Council.

The Appeals Council first remanded the action to the ALJ because the audiotape recording of the hearing could not be located.  That remand order was later vacated when the recording was found.  The Appeals Council then denied Porch's request for review.  Porch then appealed to the district court.  While that appeal was pending, the Commissioner moved to remand the action, admitting that the ALJ had failed to properly evaluate Porch's subjective complaints of pain pursuant to our decision in Polaski

---

[1]Porch continued to meet the earnings requirements until December 1992 so the issue is whether she was disabled before then.

v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[2]  In an order dated December 3, 1992, the district court found that although the Secretary's motion to remand was not proper under 42 U.S.C. § 405(g),[3] a remand was appropriate because "[a remand] will be more direct than waiting for a full record." Admin. R. at 273.  The district court further noted that this case "has already been unduly delayed by the workload of the United States Courts and should not be delayed any further."  Id.  The action was remanded for further proceedings.

On May 17, 1993, another hearing was held before the same ALJ.  Porch testified that she suffers from constant, steady pain in her upper and lower back and additional sharp, shooting pains in her back that occur three or four times a day.  She has numbness in both hands and muscle spasms in her thumbs.  She testified that it is difficult for her to write and that she can write for about ten minutes. She can lift nothing heavier than a gallon of milk and often drops things.  She can walk only one block. She also has numbness in her right leg and often falls when her legs "give out."  She testified that she can stand for only twenty to thirty minutes and can sit for only twenty minutes.  She cannot drive, and when riding in an automobile, must recline with pillows.

---

[2]Polaski requires the fact finder to consider the claimant's prior work record, observations by third parties and treating and examining physicians relating to: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) dosage, effectiveness and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions.  Polaski, 739 F.2d at 1322.

[3]Under 42 U.S.C. § 405(g), the Commissioner is entitled to a remand on motion and on a showing of good cause only before she files an answer.  Here, she had filed an answer before moving to remand.

Porch stated that doctors have recommended surgery for both her back and hands but she cannot afford it. She currently takes Motrin[4] four times a day for pain and inflammation and Methocarbamol[5] for muscle spasms. She testified that these medications produce side effects including constipation, upset stomach, and fatigue. She wears a brace on her right wrist, a brace on her back, and uses a cane. She spends most of her day lying on the couch with her feet elevated and a heating pad on her back.

Porch's husband also testified at the hearing. He stated that his wife ordinarily gets up twice during the night because of pain. He stated that she drops dishes and falls when walking. He testified that she cannot do laundry, wash dishes, or drive. The record also contains the affidavits of Porch's daughters, who essentially corroborate the testimony of Porch and her husband. The daughters stated that their formerly energetic mother suffers from debilitating pain.

The ALJ called a vocational expert (VE) to testify at the hearing. He classified Porch's past relevant work as an LPN as heavy, physically demanding, skilled work. The ALJ asked the VE, in a hypothetical question, whether a claimant who wore a brace on her wrist, could walk about a block, could stand for twenty

---

[4]Motrin is a nonsteroidal anti-inflammatory agent. It is indicated for relief of rheumatoid arthritis, osteoarthritis, and mild to moderate pain. Physician's Desk Reference 2565 (49th ed. 1995).

[5]Methocarbamol is indicated for the relief of discomforts associated with acute, painful musculoskeletal conditions. Its mode of action may be related to its sedative properties and it may act as a central nervous system depressant. Physician's Desk Reference at 2015.

minutes, could sit for an hour and took medications that caused the side effects of an upset stomach and constipation could return to work as an LPN. The VE stated that a person with those impairments would be unable to return to an LPN position. He stated, however, that such a claimant

could perform the jobs of a nurse consultant[6] or a cardiac technologist,[7]

_____

[6]A nurse consultant:

> advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services: Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications. Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs. Provides assistance in developing guides and manuals for specific aspects of nursing services. Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups. Advises in services available through community resources. Consults with nursing groups concerning professional and educational problems. Prepares or furnishes data for articles and lectures. Participates in surveys and research studies.

United States Dep't of Labor, Employment and Training Admin., Dictionary of Occupational Titles, Vol. 1 § 075.127-014 (4th ed. 1991) (DOT).

[7]A cardiopulmonary technologist:

> performs diagnostic tests of cardiovascular and pulmonary systems of patients to aid physician in diagnosis and treatment of heart, lung and blood vessel disorders: Prepares patient for test and explains procedures to obtain cooperation and reassure patient. Conducts electrocardiogram, phonocardiogram, echocardiogram, stress testing, and other tests to aid in diagnosis of cardiovascular system, using variety of specialized electronic test equipment, recording devices, and laboratory instruments. Conducts tests of pulmonary system to aid physician in diagnosis of pulmonary disorders, using spirometer and other respiratory testing equipment. Operates multichannel physiologic monitor, as part of cardiac catheterization team, to measure and record functions of cardiovascular and pulmonary systems of patient during cardiac catheterization. Alerts physician to instrument readings outside normal ranges during cardiac catheterization procedures. Provides test results to physician.

classifying both positions as

_____

DOT § 078.362-030.

sedentary.  On questioning from Porch's attorney, the VE conceded that neither of these positions could be performed by a person who experienced tiredness or lack of precision or accuracy as a result of medication or lack of sleep.  He also stated that both of the jobs would require some charting and writing and that an individual "couldn't attend to the tiredness . . . by withdrawing from the task [or] . . . to the strength loss by withdrawing from writing."  Admin. R. at 342.

The medical evidence shows that Porch first began to experience back pain in January 1989.  After eight visits to a chiropractor did not alleviate the pain, she saw an orthopedic surgeon, Dr. Victor Guerrero. He diagnosed a herniated disc and degenerative disc disease.  Porch underwent surgery on the ruptured disc on March 31, 1989.  The surgery relieved the pain and numbness Porch had been suffering on her left side. Five weeks or so after the surgery, however, Porch began to suffer pain and numbness on her right side.  A CT scan showed a bulging disc.  Her doctor recommended surgery but Porch had lost her insurance and could not afford it.  In 1989, she was diagnosed with carpal tunnel syndrome.  Her most recent MRI showed no herniated discs but "narrowing of the Secal Sac at the C6-7 level" and "changes consistent with post-op scarring" in the lumbar spine.  Dr. Barton Clemmons submitted a letter dated July 5, 1990, stating that Porch has had a disabling condition since 1989 that is consistent with Section 1.05 of the

Commissioner's listing of presumptively disabling conditions, 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings").[8]

The ALJ stated that he fully credited Porch's subjective complaints of pain and found her testimony credible and persuasive. He stated that she had a good work record and that there was ample objective evidence of underlying medical conditions in the record which could reasonably be expected to cause the complaints she has. However, his acceptance of her testimony was limited to finding that "she is unable to sit more than one hour without change of position" and that her pain medications cause side effects of constipation and nausea. Admin. R. at 195. The ALJ thus found Porch was unable to return to her former work as an LPN, but that she had "marketable skills which were transferable to sedentary jobs which were within her residual functional capacity," relying on the VE's testimony. Id. The ALJ discounted the physician's letter stating that Porch had a disability consistent with a presumptively disabling condition because he found "[t]he claimant has consistently shown the ability to walk and stand without significant neurologic deficits; her ability to walk and stand is limited by pain, not by denervation." Id. at 194. Accordingly, he found that Porch is not disabled under the Social Security regulations.

---

[8]Section 1.05 of the Listings deals with disorders of the Spine. Subsection (C) of that section describes "[o]ther vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months" with both: 1) pain, muscle spasm, and significant limitation of motion of the spine; and 2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.05(C).

The Appeals Council again affirmed, as did the district court. On appeal, Porch contends that the Commissioner's decision is not supported by substantial evidence and that the Commissioner failed to meet her burden of showing that there are jobs in the national economy that Porch can perform.

## II. DISCUSSION

Our task on appeal is to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Siemers v. Shalala, 47 F.3d 299, 301 (8th Cir. 1995). Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the conclusion. Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993). In our review of the record, we consider evidence that detracts from the decision as well as evidence that supports it. Siemers, 47 F.3d at 301.

Under the Commissioner's regulations, the disability determination involves a step-by-step analysis of any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. 20 C.F.R. § 404.1520(a); Braswell v. Heckler, 733 F.2d 531, 533 (8th Cir. 1984). If the claimant suffers from an impairment that is included in the Listings or is equal to such an impairment, the claimant will be determined disabled without considering age, education, or work experience. Braswell, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the Commissioner must determine whether there is any substantial gainful activity in the national economy that the claimant can perform. Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993). The Commissioner has the burden to show that the

claimant can perform other work.  Smith v. Shalala, 46 F.3d 45, 47 (8th Cir. 1995).  Ordinarily, the Commissioner can rely on the testimony of a vocational expert to satisfy this burden.  Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997).

On review of the record in this case, we find the ALJ's decision is not supported by substantial evidence for several reasons.  First, the Commissioner did not meet her burden of showing that there are other jobs in the economy that Porch can perform.  The VE testified that Porch could perform jobs such as those of a nurse consultant or a cardiac technologist.  The expert identified each of those jobs with reference to the Dictionary of Occupational Titles (DOT), a Labor Department guide to job ability levels that has been approved for use in Social Security cases.  20 C.F.R. § 1566(d)(1).  The VE focused on the physical demands and strength ratings of the jobs as found in the DOT in forming his opinion that Porch could do those jobs.  However, in addition to physical demands and strength ratings, the DOT also sets forth the "General Educational Development" levels required for each job.  See United States Dep't of Labor, Employment and Training Admin., Dictionary of Occupational Titles, Vol. II, Appendix C at 1009 (4th ed. 1991).  These are set forth on a six-level scale in each of three areas: 1) reasoning development; 2) mathematical development; and 3) language development.  Id. at 1010-1011.

Both of the jobs that the VE testified Porch could perform require more general educational development than Porch's past work as an LPN required.  Compare id. at 60 & 67 (GED requirements for nurse consultant and cardiac technologist) with id. at 72 (GED requirements for licensed practical nurse).  The position of nurse consultant requires a higher level of development in reasoning, mathematical and language areas than the LPN position does.  Id. at

-11-

60. The position of cardiac technologist requires a higher level of mathematical development than the LPN position. Id. at 67. Thus, the VE's testimony that Porch could be employed in these positions given her level of education conflicts with the DOT. Under the DOT's classification of the jobs, neither of the positions is compatible with Porch's ability. When expert testimony conflicts with the DOT, and the DOT classifications are not rebutted, the DOT controls. Montgomery v. Chater, 69 F.3d 273, 276 (8th Cir. 1995). Accordingly, the VE's testimony does not constitute substantial evidence with which the Commissioner can meet her burden of proving there are other jobs in the national economy that Porch can perform. See id.

Next, although the ALJ stated that he credited Porch's testimony regarding the side effects of her medications, he did not actually do so. This action was remanded specifically for the ALJ to consider the side effects of Porch's medications. Indeed, the ALJ acknowledged this mandate at the hearing.[9] He nevertheless ignored the significant side effects of one of Porch's medications, while at the same time claiming that he was crediting Porch's testimony. A noted side effect of the muscle relaxer Methocarbamol is drowsiness. Physician's Desk Reference 2015 (49th ed. 1995). Porch testified that she was tired as a result of her medication. Yet the ALJ did not include this side effect in his hypothetical question to the VE. The VE testified, however, on questioning from Porch's attorney, that there would be no jobs in the national economy that a person with Porch's disabilities, with the addition of drowsiness or fatigue, could perform.

---

[9]At the second hearing, the ALJ stated: "In the remand order, they wanted me to do something about the [Polaski] case, and also they requested we do something more about the medication that the claimant was taking, make it more defined, as I understand." Admin. R. at 305-06.

Similarly, though professing to credit Porch's subjective complaints of pain, the ALJ failed to fully credit those complaints. Porch testified that she could sit for no more than twenty minutes. The ALJ apparently disbelieved that testimony, yet gave no reason for doing so. He stated in his hypothetical question to the VE that she could sit for one hour. There is no evidence to support that assertion.

An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole. See Johnson v. Heckler, 108 F.3d 942, 947 (8th Cir. 1997). Also, testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies. Pickney v. Chater, 96 F.3d 294, 297 (8th Cir. 1996). Thus, the ALJ's hypothetical question must include those impairments that are substantially supported by the record as a whole. Id. at 296. Because the ALJ credited an opinion by the VE that was based on a faulty hypothetical including absence of significant side effects of medication and an unsupported assertion that Porch could sit for an hour, the VE's testimony that there are other jobs in the economy that Porch can perform cannot constitute substantial evidence.[10]

---

[10]The ALJ also discredited medical evidence that Porch meets the Listings for a disorder of the spine by asserting that Porch's loss of motor control is due to pain, not denervation. There is nothing in the record to support that conclusion. Porch testified to significant motor loss, including numbness and falling down. In light of our finding that there is no substantial evidence in other respects, however, we need not consider whether Porch indeed meets the Listings.

## III. CONCLUSION

Given the ALJ's finding that Porch's testimony should be credited, the VE's testimony that no jobs exist in the national economy for a person with Porch's disabilities plus medication effects, and mindful of the significant delay Porch has already encountered, we find that substantial evidence in this record supports a finding that Porch is disabled. Consequently, we reverse and instruct the district court to remand to the Commissioner for an award of benefits.  See Andler v. Chater, 100 F.3d 1389, 1394 (8th Cir. 1996) (if the record contains substantial evidence supporting a finding of disability, we may reverse and remand for entry of an order granting benefits).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.