# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3501

_____

Sandra G. Taylor,                       *
                                        *
       Plaintiff - Appellant,   *  Appeal from the United States
                                        *  District Court for the
   v.                                *  Western District of Missouri.
                                        *
Shirley S. Chater, Commissioner         *
of Social Security,                     *
                                        *
       Defendant - Appellee.    *


_____

Submitted: March 12, 1997

                               Filed: July 9, 1997

_____

Before McMILLIAN, FLOYD R. GIBSON, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

     Sandra G. Taylor appeals the district court's affirmance of a denial of Social Security benefits. Because the record does not contain substantial evidence to support the finding of the Administrative Law Judge, but instead contains substantial evidence of Taylor's disability, we reverse and award benefits to Taylor.

     In July of 1993, Taylor applied for disability insurance benefits and supplemental security income benefits, alleging that she had been disabled beginning

March 15, 1989 due to severe back pain.[1]  The Department of Health and Human Services, Social Security Administration, denied her application, as well as her request for reconsideration.  Taylor then requested a hearing before an ALJ.  At the time of the hearing on June 22, 1994, Taylor was 38 years old and had a high school degree.  Taylor had worked at a cafeteria from October of 1975 to March of 1989, except for a three year period that Taylor took off to give birth to a child and to have back surgery.  Her job at the cafeteria involved carrying trays, cleaning tables, filling in as a server, and filling coffee stations with ice, tea, and coffee, as well as doing whatever else needed to be done.

Taylor started to have problems with her back during the 1980's.  In December of 1985 Taylor had a spinal fusion.  After the surgery, Taylor did not go back to work until 1987 and then continued to work until March 1989.  Toward the end of her employment, Taylor began suffering back problems again, which affected her ability to do her work, and eventually caused her to quit.

In 1989, Taylor saw Dr. Marion Wolf about her back pain.  In 1990, she again saw Dr. Wolf who then referred her to Dr. Jim Cook.  In November of 1990, Dr. Cook attempted an epidural block on Taylor's back.  In 1993, Dr. Charles Ash examined Taylor and observed that she had limited motion in her spine and believed that her x-rays indicated that she might suffer from pseudarthrosis.  Stedman's Medical Dictionary

---

[1]Taylor met the special insured status requirements of Title II of the Social Security Act on March 15, 1989, the date she alleges onset of disability, and last met the requirements on June 30, 1991.  Therefore, for the purpose of Taylor's disability insurance benefits claim, one issue before the ALJ was whether Taylor was a disabled individual under Title II of the Act beginning March 15, 1989 or on or before June 30, 1991.  For the purpose of her supplemental security income claim, another issue was whether, at the time or after she protectively filed the application for supplemental security income benefits on July 9, 1993, she was a disabled individual under the provisions of Title XVI of the Act.

defines pseudarthrosis as "[a] new, false joint arising at the site of an ununited fracture." Stedman's Medical Dictionary 1449 (26th ed. 1995). He further commented that Taylor had "significant impairment of function of the back." In January of 1993, Taylor saw Dr. Paul Olive about her back pain. In November of 1993, Dr. Aly Mohsen diagnosed Taylor with pseudarthrosis, chronic pain syndrome, as well as other complications related to her back.

At the hearing Taylor testified that she suffered back pain daily. Taylor's activities were limited because she could only sit for fifteen to twenty minutes at a time before she had to stand or lie down. She also stated that she could only stand for fifteen or twenty minutes at a time before she had to sit or lie down. In addition, Taylor testified that she had to lie down at least two or three times per day. Taylor said that she could not reach down or bend, and that she simply got down on her hands and knees and crawled in order to do an activity that required leaning over. For example, Taylor explained that she must get down on her hands and knees and crawl around the bed to make it. She testified that she had trouble washing dishes for twenty minutes, and that she needed help taking care of her home. She stated that she could walk only about one block before she needed to rest, and that she had difficulty walking up the two stair steps in her home. She also stated that she never attempted to lift more than ten pounds.[2]

During the hearing, the ALJ called a vocational expert to testify. The ALJ asked the vocational expert a hypothetical question about whether an individual that could only lift occasionally a maximum of ten pounds, and frequently carry less than ten pounds, who could stand or walk for up to a total of two hours per eight-hour work day

---

[2]During the hearing, Taylor's counsel examined her about her condition both before and after June 30, 1991. The description provided in this paragraph accurately describes her testimony concerning her condition both before and after June 30, 1991.

and sit for up to six hours per eight-hour work day, could do dining room attendant work.  The expert testified that this hypothetical person could not work at Taylor's past job at the cafeteria, but could work in other sedentary, unskilled positions such as an addresser,[3] a patcher,[4] or a food and beverage order clerk.[5]  Taylor's counsel then altered the hypothetical by asking the vocational expert to assume that the hypothetical individual described by the ALJ could stand or sit only ten to fifteen minutes at a time, would have to get up and move around frequently, and would have to lie down two or three times per day.  The vocational expert stated that no jobs in the national or regional economy could be performed by an individual with these limitations.

The ALJ found Taylor's testimony that she had disabling back pain on a daily basis "inconsistent, self-serving, and exaggerated" and therefore found Taylor not credible.  He found the vocational expert's testimony, however, to be credible, and thus determined that although Taylor could not perform her past job at the cafeteria, she could perform sedentary-type unskilled work that existed in the economy.  The ALJ therefore concluded that Taylor was not disabled as defined in the Social Security Act.

The Appeals Council of the Social Security Administration denied Taylor's  request for review, and she brought this action in federal district court.  Taylor and the Commissioner both filed motions for summary judgment.  On June 11, 1996, the district court granted summary judgment in favor of the Commissioner affirming the denial of benefits.  Taylor appeals.

---

[3]The vocational expert described an addresser as one who addresses envelopes and similar items for mailing and sorts mail.

[4]The vocational expert explained that a patcher covers wired electrical appliances with insulating fabric.

[5]The vocational expert explained that a food and beverage clerk takes food and beverage orders over a closed communication system.

On appeal, Taylor argues that there is no substantial evidence in the record to support the ALJ's rationale for disbelieving her testimony, and therefore asserts that the hypothetical question posed to the vocational expert did not include all of Taylor's impairments. Because a vocational expert's testimony based on an insufficient hypothetical question does not constitute substantial evidence, Taylor argues the district court erred in denying her claim.

Our review is limited to whether the Commissioner's decision to deny disability benefits is supported by substantial evidence on the record as a whole. See Lorenzen v. Chater, 71 F.3d 316, 318 (8th Cir. 1995). Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the conclusion. See Johnson v. Chater, 108 F.3d 942, 944 (8th Cir. 1997).

We conclude that the Commissioner's decision to deny benefits to Taylor is not supported by substantial evidence. The ALJ found that Taylor's testimony was not credible. An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the evidence as a whole. See Johnson, 108 F.3d at 947. The ALJ stated in his opinion that Taylor testified that she suffered from "daily intractable pain at all times since March 1989" and from "daily disabling back pain since 1989." The ALJ found this testimony "inconsistent, self-serving, and exaggerated." In support of this conclusion the ALJ stated that Taylor had admitted in her testimony that occasionally her back pain had been relieved or had improved.

There is no substantial evidence in the record to support the ALJ's conclusion that Taylor's testimony was inconsistent. Taylor testified that her pain had gotten worse since March 1989 and that her back problems placed great limitations on her activities. Though she did state that she had suffered and continues to suffer pain on a daily basis, she also testified that some days were better than others and that some treatments had at least temporarily improved her condition. Read in context, Taylor's testimony demonstrates that Taylor's back problems have caused her significant pain from 1989

to the hearing, though at times certain procedures had temporarily relieved or lessened some of her pain. In sum, Taylor's testimony of her disabling back pain is substantially supported by the record, and there are no inconsistencies in the record which justify the ALJ's refusal to credit Taylor's subjective complaints of back pain. The whole record of the hearing provides substantial evidence that Taylor suffered a great deal of pain because of her back problems.

The ALJ commented further that Taylor had not seen a doctor regularly, and that none of the medical reports indicated that she had ever told a doctor that her condition required her to lie down during the day. He concluded that "[i]f she is lying down that much, it is apparently an 'inactivity' of personal choice." The administrative record indicates that Taylor saw a doctor for her back pain several times since 1989. Further, the lack of information contained in any of the reports completed by Taylor's doctors does not qualify as an inconsistency in the evidence as a whole. The medical reports certainly made no attempt to catalog Taylor's every pain and her behavior resulting from the pain.

We see no inconsistencies in the record that justify finding Taylor not credible.

Based upon the ALJ's conclusion that Taylor was not credible, the ALJ rejected Taylor's testimony that she could only stand or sit for fifteen minutes before changing positions, and that she had to lie down at least two or three times per day. The ALJ omitted these limitations from the hypothetical he presented to the vocational expert who testified during the hearing. He asked the expert whether an individual with certain limitations could perform dining room work. The limitations he listed included:

> lifting and/or carrying the maximum of ten pounds on occasional basis and less than that on a frequent basis and is able to stand and /or walk up to a total of about two hours in an eight-hour work day and sit for up to six hours in an eight-hour work day. Both of those with usual breaks. And is able to push and/or pull either hand or foot controls and same weight

basis as for lifting and carrying and is limited on climbing to only occasionally doing climbing of ramps and stairs. Also is limited to only occasionally stooping and should not do kneeling, crouching or crawling in work activities and is able to do balancing on frequent basis. The individual should work in an atmosphere of [sic] work station that avoids concentrated exposure to extreme cold and extreme heat and hazards such as working around heavy machinery or uneven surfaces.

The expert responded that this hypothetical individual would not be able to do dining room attendant work. The expert explained, however, that an individual with Taylor's vocational background and the limitations outlined in the hypothetical could work in some unskilled, sedentary jobs such as an addresser, a patcher, or as a food and beverage order clerk.

Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies. See Porch v. Chater, No. 95-4025, 1997 WL 272322, at *5 (8th Cir. May 23, 1997); Pickney v. Chater, 96 F.3d 294, 297 (8th Cir. 1996). Therefore, the hypothetical question answered by a vocational expert must include all those impairments that are substantially supported by the record as a whole. See Porch, No. 95-4025, 1997 WL 272322 at *5. Here, the ALJ's hypothetical seemed to be based largely on Taylor's residual functional capacity assessment checklist. Residual functional capacity checklists, though admissible, are entitled to little weight in the evaluation of a disability. See Gilliam v. Califano, 620 F.2d 691, 693 (8th Cir. 1980). The hypothetical included an unsupported claim that Taylor could stand or walk for up to two hours and sit for up to six hours in an eight-hour work day. Taylor's testimony was that she could only sit or stand for a maximum of fifteen to twenty minutes at a time before needing to change position, and that she had to lie down at least two to three times per day. The hypothetical thus incorrectly characterized Taylor's impairments. Because the ALJ credited the vocational expert's opinion that was grounded on a hypothetical that incorrectly characterized Taylor's

deficiencies, there is no substantial evidence to support the expert's testimony that there are jobs in the economy that Taylor can perform. See id. at 693-94. See also Olson v. Shalala, 48 F.3d 321, 323 (8th Cir. 1995) (ALJ incorrectly credited testimony of a vocational expert based on hypothetical which directly conflicted with record as a whole indicating claimant was incapable of sitting for any length of time).

Taylor's counsel then asked the vocational expert to alter the hypothetical by increasing the hypothetical individual's limitations as follows: that the individual could stand and sit only for ten to fifteen minutes at a time; would have to get up and move around frequently; and would have to lie down two or three times per day. Because substantial evidence exists in the record to show that Taylor suffered from these impairments, she was entitled to have the vocational expert consider them, along with the other impairments listed in the ALJ's hypothetical. See Pickney, 96 F.3d at 297. In response to the second hypothetical, the vocational expert testified that there would be no jobs in the national or regional economy that could be performed by an individual with these limitations. The ALJ thus incorrectly denied benefits to which Taylor was entitled.[6]

Although remand to the district court with instructions to remand to the Commissioner for further proceedings is the normal remedy, remand is not necessary where the record overwhelmingly supports a finding of disability. See Olson, 48 F.3d at 323. Here, when Taylor's counsel presented a hypothetical to the vocational expert that properly characterized Taylor's disabilities, the expert testified that there were no jobs in the national or regional economy that such a hypothetical individual could perform. Taylor is thus disabled within the meaning of the Social Security Act. Moreover, our review of the record indicates that Taylor's disability existed before, as well as after, June 30, 1991.

---

[6]Substantial evidence in the record indicates that Taylor suffered from these additional limitations both before and after June 30, 1991.

Accordingly, we reverse the district court's decision and remand the case to the district court with directions to grant summary judgment in favor of Taylor, and to remand the case to the Commissioner with directions to grant benefits to Taylor.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.